IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

GREGORY L. HAMILTON, JR.                                                   PLAINTIFF

v.                         Civil No. 6:21-CV-06098

RICO WILLIAMS, ISAAC EMERSON,                              DEFENDANTS
JIMMY COLEMAN, DEXTER PAYNE,
JAMES GIBSON, CULCLAGER and
S. FRANK

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court for preservice screening under the provisions of 28 U.S.C. § 1915A.[1] Under § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

## I. BACKGROUND

Plaintiff filed his Complaint in the Eastern District of Arkansas on June 1, 2021. (ECF No. 2). It was transferred to this District on June 9, 2021. (ECF No. 4). On June 9, 2021, the Court entered an Order directing Plaintiff to file an Amended Complaint, which Plaintiff did on July 6, 2021. (ECF No. 9).

---

[1] Enacted as part of the Prison Litigation Reform Act ("PLRA").

For his first claim, Plaintiff proceeds against Defendants Williams and Emerson in their individual capacity. (ECF No. 9 at 5-6). Plaintiff alleges that on December 2, 2020, he was incarcerated in the Arkansas Division of Correction Ouachita River Unit, and Defendants Williams and Emerson were escorting him to the shower. Plaintiff's hands were behind his back and secured in handcuffs. (*Id*. at 5). Plaintiff alleges he pulled away from Williams to face him, Williams pulled Plaintiff back towards himself, causing Plaintiff to run into Williams. (*Id*.). Williams then picked him up and slammed him down to the floor face-first, which briefly knocked Plaintiff unconscious. (*Id*.). Plaintiff alleges that when he regained consciousness, Defendant Emerson was holding him down while Defendant Williams was punching him "repeatedly very hard" in the side of his face, back of the head, neck, back, ribs, and legs. (*Id*. at 5-6). Defendant Emerson was telling Defendant Williams, "Stop. You can't do this. Just get out of here man, just leave." (*Id*. at 6). Williams continued to punch Plaintiff until other officers arrived and pulled him away from Plaintiff. (*Id*.) Plaintiff alleges he had abrasions, bruising, and swelling over one eye for almost six weeks, multiple "contusions or knots on [his] head," and bruising on his back and ribs. (*Id*.). Plaintiff alleges he was struck almost a dozen times. (*Id*.). He describes Williams' actions as malicious, sadistic, and done "in a rage." (*Id*.). Plaintiff alleges that he now suffers panic attacks when he is handcuffed or shackled. (*Id*. at 7).

Plaintiff alleges he was transferred to the Varner Supermax Unit after the incident and placed in prolonged solitary confinement, where he suffered from unconstitutional conditions of confinement, including clogged cell drains, a cold cell, burning hot shower water, vermin crawling on him, smoke and mace constantly in the air in clouds, cells flooding from rain and other inmates, constant noise, and violent outbursts from staff. (ECF No. 9 at 7). He also appears to allege that the mostly Black inmate population has subjected him to racism and discrimination and frequently

talks about killing "white boys." (*Id*.). Finally, he appears to allege that much of the Varner staff is Black and belongs to the same Black gangs as the inmates. (*Id*.). He alleges he is sometimes afraid to eat the food, and the conditions have caused "emotional anguish and psychological trauma." (*Id*.). Plaintiff does not indicate how Defendants Williams or Emerson were responsible for his transfer or for anything occurring in the Varner Unit.

For his second claim, Plaintiff proceeds against Defendants Coleman, Cuclager, Payne, James, Gibson, and Frank in their official capacity. (ECF No. 9 at 8, 10). He alleges his rights were violated on December 2nd, 4th, and 14th of 2020, and on April 5, 2021.[2] (*Id*. at 8). Plaintiff alleges that Defendants Culclager and Coleman were both at the unit the night of December 2, 2020, and escorted him to Isolation. (*Id*. at 8). Culclager told him that "Blue Lives Matter" and he would "ride with the blue suits no matter what." (*Id*.). He was transferred to the Varner Unit the next day, and received a disciplinary charge signed by Defendant Coleman which stated that Plaintiff refused medical treatment and was only punched one time. (*Id*.). Plaintiff alleges that Defendant Coleman signed the disciplinary charge knowing that Defendant Williams' testimony was false. (*Id*.). Plaintiff alleges that Defendant Williams was known to use verbal slurs against white inmates, including such phrases as "tuff as white boys" and "Fuck them white boys." (*Id*. at 8-9). Plaintiff alleges Defendant Payne was deliberately indifferent when he denied Plaintiff's disciplinary charge appeal and denied his grievance concerning the incident because it was based on a disciplinary matter. (*Id*. at 9). Plaintiff alleges Defendant Gibson signed extensions for his disciplinary charge and Defendant Frank delivered them. (*Id*.). Plaintiff alleges Defendant Payne

---

[2] It is not clear what incident Plaintiff is referring to which occurred on April 5, 2020, as the text of Claim Two only discusses the incident which occurred on December 2, 2020. Plaintiff, therefore, failed to state any cognizable claim for this date. See *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (Even a *pro se* Plaintiff must allege specific facts sufficient to support a claim.) The Court will infer that the additional dates in December refer to the extensions for that incident.

also signed a disciplinary charge extension. (*Id*.). Plaintiff alleges he is asking for an injunctive change to the ADC policy.³ (*Id*. at 9).

Plaintiff alleges that the ADC policy which prevents inmates from filing grievances about disciplinary matters is a "malicious and broken policy." He elaborates as follows: for "example if you are beaten while you are shackled and your constitutional rights are violated, but the officer writes you a disciplinary saying you resisted during the attack[,] you cannot grieve the attack because it's then a disciplinary matter." (ECF No. 9 at 9).

For his third claim, Plaintiff alleges that his Fourteenth Amendment Due Process rights were violated by the disciplinary charge process. (ECF No. 9 at 10-11). No dates were provided for this occurrence, so the Court must infer that Plaintiff referred to the incident which occurred on December 2, 2020, and any subsequent disciplinary charges arising from that incident. Plaintiff names Defendants Frank, Gibson, Culclager and Payne for this claim. (*Id*. at 10). He proceeds against them in their official and individual capacities. (*Id*. at 11). He alleges that he was only permitted to list five witnesses, even though many more individuals had witnessed the incident. He does not know if the witnesses he listed were called. (*Id*. at 11). He alleges that this denied him "the credibility of multiple witnesses." (*Id*.). He also appears to allege that time extensions for the charge violated his due process rights as well, because the disciplinary charge should be thrown out if it is not served to the inmate within the proper time. (*Id*. at 12). Plaintiff alleges that "the actions of Gibson Frank Culclager and Payne in refusing to call witnesses and signing the extension and disciplinary and Payne upholding all the decisions" meant he was denied due process. (*Id*.). Plaintiff states a disciplinary extension is only supposed to be issued if more time

---

³ The Eighth Circuit has made it clear prisoners do not have a constitutional right to a prison grievance procedure. *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (no claim when "various defendants denied his grievances or otherwise refused to help him"). Thus, Plaintiff's claim that the ADC grievance policy is malicious and broken fails to state a plausible constitutional claim and will not be considered further by the Court.

4

is needed to conduct a disciplinary hearing.  He believes that the extensions were used due to the COVID-19 pandemic and quarantine requirements, but does not believe that these issues should justify a violation of policy or falsifying documents.  (*Id*.).

Plaintiff seeks compensatory and punitive damages.[4]  (ECF No. 9 at 13).  He also seeks other relief.  First, he seeks a declaratory judgment that the physical abuse by Defendant Williams violated his constitutional rights and an order directing Defendant Payne to amend the ADC policy to permit inmates to grieve disciplinary matters.  Second, he seeks an "injunction" removing any mention of the charge of "battery on staff," for which Plaintiff was found not guilty, from his institutional jacket.  Third, he seeks restoration of his Class I status, along with an "injunctive order" sending Plaintiff to an ADC unit where he can complete SATP, college courses, and be free from retaliation from any member of the ADC.  (*Id*. at 14).

Plaintiff references a disciplinary action for the incident with Williams and Emerson on December 2, 2020, in Claim One, but he does not indicate what charges were brought against him.  He references a denied appeal for a charge related to the incident, but also notes a battery charge for which he was found not guilty in his request for relief.  Plaintiff does not state if this battery charge arose from the incident on December 2, 2020.  Because it was not clear what Plaintiff had been charged with for the December incident, the Court reviewed his ADC disciplinary record for clarification.[5]  Plaintiff's ADC record indicates he was convicted of the charge of failure to obey orders on December 2, 2020.  The Court will not speculate as to any other possible disciplinary charges for that or another incident.  *See Martin*, 780 F.2d at 1337 (Even a *pro se* Plaintiff must allege specific facts sufficient to support a claim.)

---

[4] Plaintiff also provides several specific requests as to the amount of monetary damages.
[5] Arkansas Division of Correction, https://doc.arkansas.gov/correction/ (accessed Aug. 12, 2021).

## II. LEGAL STANDARD

Under the PLRA, the Court is obligated to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Even a *pro se* Plaintiff must allege specific facts sufficient to support a claim. *Martin*, 780 F.2d at 1337.

## III. ANALYSIS

### A. Claim One

Plaintiff has stated a plausible individual capacity claim for excessive force against Defendants Williams and Emerson for the incident on December 2, 2020.

His claims concerning his transfer to another ADC unit, conditions of confinement after the transfer, and verbal harassment at the new unit, however, are subject to dismissal. "Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370 (1976). Plaintiff proceeds against Defendant Williams and Emerson in their individual capacity only, and has stated they work at the ADC Ouachita River Unit. He has not provided any factual allegations as to how they were responsible for his transfer to the Varner Unit, the

conditions of confinement at the Varner Unit, or any verbal harassment at the Varner Unit. Thus, these claims are subject to dismissal. See *Martin*, 780 F.2d at 1337 (Even a *pro se* Plaintiff must allege specific facts sufficient to support a claim. ).

The Court also notes that Plaintiff failed to allege sufficient facts to state a constitutional claim even if he had sufficiently linked Defendants to these claims. Prisoners have no inherent constitutional right to placement in any particular prison facility; to transfer to a particular prison facility; to a particular security classification; or to a specific housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). Similarly, "[f]ear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997). Finally, Plaintiff does not allege that he suffered any actual physical injury from the conditions of confinement at the Varner Unit. See *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (prisoner must suffer an actual and *non-de minimis* injury to state an Eighth Amendment claim).

### B.     Claim Two

Plaintiff alleges that his constitutional rights were violated by the disciplinary charge process. Plaintiff names Defendants Coleman, Cuclager, Payne, James, Gibson, and Frank for this claim. Plaintiff proceeds against Defendants for this claim in their official capacity alone. "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work." *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). The Defendants in this case are all employees of the ADC, thus Plaintiff's official capacity claim against the Defendants is a claim against the ADC. *Id.* The ADC is a state agency. *See Fegans v. Norris*, 351 Ark. 200, 206, 89 S.W.3d 919 (2002). States and state agencies are not "persons" subject to suit under § 1983. *Howlett v. Rose*, 496 U.S. 356 (1990); *Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989); *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). "This bar exists whether the relief sought

is legal or equitable." *Williams v. Missouri*, 973 F.2d 599, 599-600 (8th Cir. 1992) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)). "Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become section 1983." *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) (citing *Quern v. Jordan,* 440 U.S. 332, 342 (1979)).

The Defendants in this case are all employees of the ADC. As such, Plaintiff's official capacity claims against them are barred by sovereign immunity.[6]

### C. Claim Three

Plaintiff alleges his Fourteenth Amendment Due Process rights were violated by the disciplinary charge process for the charges arising from the incident on December 2, 2020. He names Defendants Frank, Gibson, Culclager, and Payne for this claim, and he proceeds against them in both their official and individual capacities. As discussed in Claim Two, his official capacity claims against them are barred by sovereign immunity.

This leaves his individual capacity claims. Plaintiff's record indicates that he was convicted of a disciplinary charge for the incident on December 2, 2020. As such, his individual capacity claims are barred by the *Heck* doctrine. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. 486-87. The Court noted that if a successful claim would not demonstrate the invalidity of an outstanding criminal judgment, it should be allowed to proceed.

---

[6] Plaintiff labelled several of his relief requests as injunctions or a request for an "injunctive order." None of them, however, can be construed as requests for prospective injunctive relief concerning the disciplinary charge process.

The *Heck* doctrine applies to inmate disciplinary proceedings. *Edwards v. Balisok*, 520 U.S. 641 (1997); *Portley-El v. Brill*, 288 F.3d 1063 (8th Cir. 2002). An inmate challenge to the validity of a disciplinary conviction is barred by *Heck*. *Edwards,* 520 U.S. at 646-48. Any challenge to the effect of the disciplinary sanction on the award or revocation of good-time credit is also barred, as the credit will ultimately change the duration of the sentence served. *Id.* Thus, *Heck* requires favorable termination of the disciplinary charge "in an authorized state tribunal or a federal habeas court, even if the claim is for damages rather than earlier release." *Sheldon v. Hundley*, 83 F.3d. 231, 233 (8th Cir. 1996); *Cincoski v. Richard*, 418 F. App'x 571, 571-72 (8th Cir. 2011) (Plaintiff's claims regarding his disciplinary convictions, including restoration of good-time credits, declaratory relief, and damages based on those convictions were *Heck*-barred.)

Here, Plaintiff has not alleged that the disciplinary charge for the December 2, 2020 incident was reversed or otherwise favorably terminated; instead, he alleges that it was upheld on appeal by Defendant Payne. A disciplinary conviction for December 2, 2020, remains on his ADC record. Because success on Plaintiff's due process claims would challenge the validity of his disciplinary conviction, his due process claims are *Heck*-barred. *See, e.g., Edwards*, 520 U.S. at 648 (inmate's claim for declaratory and money damages based on allegations of deceit and bias on the part of the hearing officer are not cognizable under § 1983 because they would imply the invalidity of the punishment).

### IV. CONCLUSION

Accordingly, it is recommended that Plaintiff's individual capacity claims for excessive force against Defendants Williams and Emerson for the incident on December 2, 2020, remain for further review. All other claims against all other Defendants should be DISMISSED WITHOUT PREJUDICE.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 16th day of August 2021.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE